# COUNTY OF CUMBERLAND.

---

\* MOSES GOULD *versus* SYLVANUS R. LYMAN.

The divisional line between the *Custom-house wharf* and *Portland pier* in the city of Portland established.

REPORTED from *Nisi Prius* by GOODENOW, J.
The case is stated in the opinion of the Court.

*Rand,* for plaintiff.

*Shepley & Dana,* for defendant.

The opinion of the Court was drawn up by

RICE, J. — This case comes before us on report. There are many deeds in the case, but the evidence, tending to show their location upon the face of the earth, is by no means satisfactory. The plan,† also, which accompanies the case, which,

---

\* The case was argued for plaintiff in 1857, and continued to be argued in writing. The opinion was announced in 1861.

† The plan did not come into the hands of the Reporter.

though executed with skill, does not designate many of the lots and monuments relied on by the parties. In this condition of the evidence we are obliged to determine many questions inferentially, which, possibly, might have been established by direct evidence. In addition to this, the defendant's counsel have presented no argument in the case. We, however, proceed to dispose of the case, as best we may, upon the evidence which has been furnished.

Both parties claim by deed from Thomas Warren. The plaintiff holds under two deeds from said Warren, the first of which bears date August 15, 1851, and conveys a lot of flats in Portland, lying between Wharf street and Commercial street, and is bounded—commencing in the line of division between the proprietors of Custom-house wharf (formerly Titcomb's wharf) and Thomas Warren's flats, at its intersection with Commercial street; thence running south-westerly thirteen and three-quarters feet, on the line of Commercial street, to a stake; thence running north-westerly, from those two bounds, to Wharf street, keeping the width of thirteen and three-quarters feet. The second deed to plaintiff, bearing date February 18, 1852, conveys a parcel of flats twenty-five feet wide and lying south-westerly of, and adjoining, the piece conveyed by the first deed.

The defendant claims under a deed from the same grantor, to Lyman & Richardson, dated January 29, 1853. The land conveyed by this deed is described as follows:—" Beginning at the intersection of Wharf street with the north-easterly side of the passage-way leading to Portland pier, and twenty-six feet from the southerly corner of John Wilson's brick store; thence, by said Wharf street, north-easterly fifty-nine feet, to a stake; thence, south-easterly fifty-six feet, to Commercial street; thence, by Commercial street, south-westerly sixty-two and one-quarter feet, to the intersection of said street with the passage-way leading to Portland pier; thence, north-westerly, by said passage-way, forty-eight and one-half feet, to the first mentioned bounds."

These three deeds, from Warren, purport to convey on

Wharf street 97¾ feet, and were intended to be located on the flats situated between Wharf street and Commercial street, and between the passage-way, on the south-west, and the line of division between Custom-house wharf and Portland pier, on the north-east.

It is contended by the plaintiff, that there is not land sufficient, between these two exterior lines, to fill all the calls in the several deeds, but, that the last deed from Warren, under which defendant holds, overlaps the land covered by the plaintiff's second deed, several feet. This is denied by the defendant. Whether it does so or not depends upon the location of the divisional line above referred to.

It is admitted by the parties, that the Woodman and the Pierson lines, both of which extend from low water mark across and beyond Commercial street and Wharf street, are correctly delineated upon the plan.

The proprietors of Falmouth, September 30, 1736, granted to Edmund Mountfort a "small tract or parcel of rocks, beach, and flats, lying in Falmouth, and on the north-west side of the Fore river, so called, the same being bounded as follows, viz. : — Beginning at a stake standing at the most northerly corner of a parcel of flats laid out to Samuel Proctor, before his house, below the road," &c. This lot run 52 feet, as the shore runs, and extends below the road, at that width, far enough to make one-half acre.

On the 7th of April, 1784, the proprietors of Falmouth granted to Joseph Noyes the flats, beach, and rocks, in Falmouth, lying below Fore street and between flats then in possession of Benjamin Titcomb, the line of which is understood to be Pierson's line, and flats before granted to Samuel Proctor and Edmund Mountfort. These grants to Mountfort and Noyes having passed through sundry mesne conveyances, or so much thereof as is necessary to illustrate the point now in controversy, are now owned by the proprietors of Custom-house wharf.

August 15th, 1788, the heirs of Samuel Proctor, by deed of partition, divided certain real estate then held in common

by them. This estate, which consisted of two parcels, was divided into five parts. The first parcel divided is thus described in the deed of partition: — " beginning at high water mark at the north-east corner of Benjamin Woodman's wharf; thence by said high water mark north-easterly ninety feet, and from these two bounds adjoining said Woodman's wharf and flats, to the channel." This tract was divided into four lots of twenty-two and one-half feet each, and constituted four-fifths of the whole estate divided by the above deed among the heirs of Samuel Proctor. The north-east side of Benjamin Woodman's wharf and flats, is understood to be the " Woodman line." The other portion of the Proctor estate divided was situated west of the Woodman wharf.

Thus it will appear .that the ninety feet of flats belonging to heirs of Samuel Proctor, the half acre granted Mountfort, and the tract granted to Noyes, covered all the flats between the Woodman and Pierson lines. It also appears that the Mountfort and Noyes grants are now represented by the proprietors of Custom-house wharf, and that the Mountfort grant adjoins the Proctor lot.

Having thus ascertained the location of these several parcels with reference to each other, and also that the Mountfort and Noyes fronts are wholly in the Custom-house wharf lot, and also the size of the Proctor lot, it becomes important to ascertain whether any, and if so, how much, of the Proctor tract is now represented by the proprietors of Custom-house wharf.

The Proctor tract, being 90 feet in length, was divided into four lots of 22½ feet each. Of these divisional lots, No. 4, or the lot adjoining the Mountfort grant, was assigned in the deed of partition to. Enoch Ilsley. On the 3d of January, 1798, Ilsley conveyed to Rogers & Hatch certain real estate, situate on Fore street, in Portland, " together with one-fifth part of flats, in common and undivided, belonging to the heirs of old Mr. Samuel Proctor, late of Falmouth, deceased, one-fifth of said flats is supposed to be twenty-seven feet wide, and to extend south-easterly to the channel, or low water

mark, and fronts the above land," that is, the land first refer-
red to in said deed.

There is no evidence in the case tending to show that Ilsley
had any interest in any flats in that vicinity which belonged
to the heirs of old Mr. Samuel Proctor, except those referred
to in the deed of partition, and in those his interest was not
then in common and undivided, but had been specifically as-
signed to him, consisting of lot No. 4, and, instead of being
27 feet wide, as *supposed* in this deed, was in fact 22½ feet, as
shown by the deed of partition. This deed, however, was
sufficient to pass the lot which had been assigned to him; and
from him, the title thereto, passed, through mesne convey-
ances, to the Custom-house wharf proprietors. There is no
evidence in the case showing that any other portion of the
" Proctor flats" have been transferred to that company.

Lot No. 3, of the Proctor flats, was assigned in the deed
of partition, above referred to, to Nathaniel Proctor, and by
him conveyed to Samuel Butts, by deed dated August 21, 1788.
This deed contains the following descriptive language :—" Be-
ginning at the northerly corner of a lot of flats, belonging to
the heirs of Sarah Cox, deceased, which corner is 45 feet
from Benjamin Woodman's wharf, by high water mark ; thence
north-easterly, 22½ feet, by high water mark, and, from these
two bounds, to run south-easterly, parallel to said Woodman's
wharf and flats, and adjoining the flats of the said Sarah Cox's
heirs, to the channel."

Butts, the grantee in this deed, by deed dated February
25, 1797, conveyed this lot, and enough from No. 2, of the
Proctor lots, (which appears to have been assigned to him in
part, in the division referred to above,) to make 36½ feet in
width, to Asa Clapp ; and is represented as adjoining easter-
ly on the Ilsley flats. Clapp conveyed to Fickett, January 15,
1801, a lot 36½ feet adjoining easterly on flats lately belong-
ing to Ilsley, and, February 13, 1802, Fickett conveyed the
same to Graffam, and Graffam to Preble, Dec. 25, 1805, and,
on the 20th of April, 1813, Preble conveyed 30 feet of the
above, adjoining flats owned by Henry Titcomb, to John Ho-

bart, and it is admitted that the title of Hobart passed to Warren, the grantor of both parties. It should also be remarked, that the title to lot No. 4, of the Proctor flats, passed through Benjamin Titcomb and Henry Titcomb to the proprietors of Custom-house wharf.

Thus it appears that the Mountfort and the Noyes grants, also lot No. 4, in the Proctor flats, as divided by the heirs, is represented by the Custom-house wharf, while lots 1, 2 and 3, in the Proctor flats, were represented by the Portland pier, or Thomas Warren. These three lots adjoin each other—they are each 22½ feet wide, and No. 1 adjoins the Woodman line. The result is, that the divisional line between the Custom-house wharf and Portland pier, is sixty-seven and one-half feet from the Woodman line. This we understand to be in conformity with the claim of the plaintiff, who is, therefore, entitled to judgment.

An assessor is to be appointed to determine the amount of rents and profits according to the agreement of the parties.

TENNEY, C. J., APPLETON, CUTTING, MAY and DAVIS, JJ., concurred.